UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MIRIAM SPINRAD,

                    Plaintiff,

          - against -

COMAIR, INC.,

                    Defendant.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 23 2011 ★

BROOKLYN OFFICE

MEMORANDUM AND
ORDER

09-CV-4111

**Appearances:**

For the Plaintiff:

> Peter A. Frankel
> Law Offices of Peter A. Frankel
> New York, NY

For the Defendant:

> George P. McKeegan
> McKeegan & Shearer, P.C.
> New York, NY

**JACK B. WEINSTEIN, Senior United States District Judge:**

Table of Contents

I.     Introduction..................................................................................................... 2
II.    Facts and Procedural History ........................................................................ 3
III.   Summary Judgment Standard ........................................................................ 5
IV.    Choice of Law................................................................................................ 6
       A.    New York Choice of Law Doctrine ................................................... 6
       B.    Potentially Applicable Tort Law....................................................... 7
             1.    New York Negligence Standard ............................................... 7
             2.    Virginia Negligence Standard .................................................. 7
       C.    Virginia Law Applies......................................................................... 7
V.     Preemption Doctrine...................................................................................... 8
       A.    General Principles .............................................................................. 8
       B.    Express Preemption.......................................................................... 10

1

        C.    Implied Preemption............................................................................. 10
              1.    Field Preemption......................................................................... 11
              2.    Conflict Preemption..................................................................... 12
VI.    Relevant Federal Law ...................................................................................... 12
        A.    The Federal Aviation Act................................................................... 12
        B.    The Airline Deregulation Act............................................................. 14
              1.    General Principles........................................................................ 14
              2.    Relevant Statutory Terms: "Related To" and "Service" ................. 15
        C.    Implementing Regulations ................................................................. 19
VII.   Plaintiff's State-Law Negligence Claim is Not Preempted by Federal Law ..................... 20
        A.    The Federal Aviation Act................................................................... 20
        B.    The Airline Deregulation Act............................................................. 24
VIII.  Comair is Not Entitled to Summary Judgment on Plaintiff's Negligence Claim .......... 27
IX.    Conclusion ..................................................................................................... 27

## I.    Introduction

This case presents a close question on preemption. It falls within the ill-defined borderland between areas subject to exclusively federal regulation and those in which the states have traditionally exercised their powers by way of the common law.

Defendant Comair, Inc. ("Comair") moves for summary judgment dismissing the state-law negligence claim of plaintiff Miriam Spinrad. Plaintiff slipped, fell, and was injured while disembarking from defendant's airplane. She claims that defendant failed to take reasonable care to ensure that she could leave the airplane safely. In the present motion, defendant contends that any and all state-law negligence claims asserted by plaintiff are preempted by federal law. Alternatively, defendant argues that, even if the court concludes that plaintiff's state-law action is not preempted by federal law, summary judgment is appropriate since no reasonable jury could conclude that any negligence by Comair was the proximate cause of Spinrad's injuries.

Summary judgment is denied. For the reasons explained below, federal preemption does not bar plaintiff's claim, based on state common law: plaintiff provides substantial evidence supporting her claim that defendant should have provided safer means, and assisted her, in

2

disembarking. The Federal Aviation Act (the "FAA"), 49 U.S.C. §§ 40101 *et seq.*, neither explicitly nor impliedly bars Spinrad from bringing a negligence claim based on the above-described theories against Comair, although it would bar a claim based on a theory of defective design. And the Airline Deregulation Act's (the "ADA") express preemption clause, 49 U.S.C. § 41713(b), does not preempt plaintiff's claim. As to the negligence claim itself, summary judgment is inappropriate, because a reasonable jury could conclude that Comair's alleged failure to take adequate care to ensure that plaintiff could safely exit their airplane was the proximate cause of Ms. Spinrad's injuries.

## II.    Facts and Procedural History

Plaintiff Miriam Spinrad, now seventy-two years of age, was a passenger on a July 2008 flight operated by defendant; she and her husband were traveling from New York to Florida. *See* Defendant's Local Civil Rule 56.1 Statement ¶ 1; Plaintiff's Local Rule 56.1 Responses and Statements of Additional Material Facts ¶ 1. Ms. Spinrad and her husband boarded the plane via a portable staircase after being taken by elevator to the tarmac and to the plane by bus. *See* Dep. of Miriam Spinrad ("M. Spinrad Dep.") 30 (Def. Ex. E); Dep. of Bernard Baruch Spinrad ("B. Spinrad Dep.") 9 (Def. Ex. F). Defendant was aware that plaintiff and her husband would need assistance boarding and exiting the plane and with their luggage. *See* Passenger History Record (Def. Ex. O).

While the plane was en route to its destination in Florida, another passenger became ill, and the flight was diverted to Norfolk, Virginia, for an emergency landing. M. Spinrad Dep. 38-39. Plaintiff and her fellow passengers remained seated while the passenger who had taken ill was removed from the plane. The passengers were then asked to leave the airplane so that it could be serviced. *See id.* at 39-40.

3

Because the flight on which plaintiff traveled had been diverted to Norfolk—and such flights often leave the airport at which they have had an unscheduled landing shortly after their arrival, with little notice—it was decided that the passengers were to exit the plane via its "integral airstairs," rather than by jetway or by truck-mounted stairs, both of which are normally used at the plane's expected termination point. *See* Dep. of Davor Ilic 11-18 (Def. Ex. H). Integral airstairs are stairs built into the inside of the main cabin door of the plane. They are used so that airplane passengers are able to exit a plane without utilizing ground support or a jetway connected directly to an airport terminal. *See* Dep. of Mary Arbogast ("Arbogast Dep.") 27, 29-30 (Def. Ex. G). The latter permits passengers to step directly out of the plane without traversing any steps.

As the passengers began to leave the airplane, a Comair flight attendant standing in the main cabin door urged them to be careful as they exited. While the parties disagree on the evidence, there is support for the plaintiff's contention that no appropriate employee was present at the bottom of the stairs to direct or assist her, although having an employee at the bottom of the stairs is a common practice, *see id.* at 42-45; a Delta ramp agent, responsible for securing the plane and removing bags, was present, although it appears from the record that he stood some ten to fifteen feet away from the exiting passengers and was not charged with helping passengers exit. *See* Dep. of Davor Ilic 5, 31-32. Passengers leaving the plane were able to hold onto a handrail, but it terminated several steps above the end of the airstairs closest to the ground. *See* M. Spinrad Dep. 49. Approximately a foot of space existed between the final step of the airstairs and the tarmac—a drop greater than that of the risers on the stairs above. *See* Arbogast Dep. 46; *see also* Photographs of Aircraft Stairs (Def. Ex. N).

Plaintiff—then sixty-eight years old, and accompanied by her husband, who needed a cane— carried a small bag on her shoulder as she exited the plane after her spouse.  She and her husband had not asked for special assistance in getting off of the aircraft, although, as already noted, the airline had been informed that the couple needed special assistance exiting the plane and with their luggage.  As plaintiff reached the bottom of the airstairs, she stepped forward, lost her balance, and fell.  Two bones in her left leg and a bone in her right foot were broken.  *See* M. Spinrad Dep. at 43, 58.  She was treated at a hospital in Norfolk, Virginia, and then flown to a hospital in Manhattan, where she spent three nights.  No surgery was required, *see id.* at 59-60, 63, 67, but physical therapy was required.  A cane is now required when plaintiff leaves her house.  *See id.* at 69, 72-73.

Spinrad sued Comair in a New York state court in August 2009, alleging in her single-count complaint that her injuries were caused by defendant's negligence.  *See* Complaint 1-3 (Def. Ex. A).  Comair removed the case to this court.  *See* 28 U.S.C. §§ 1332, 1441.  Defendant now moves for summary judgment.

### III.   Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999).  After construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is to be granted.  Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 247-50, 255.  In determining whether the party seeking summary judgment has met its burden, "the court is

required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

## IV. Choice of Law

### A. New York Choice of Law Doctrine

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). In New York, the "first step in any case presenting a . . . choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co.*, 613 N.E.2d 936, 938 (N.Y. 1993). Assuming that an actual conflict exists between the laws of jurisdictions with interests in having their law applied to the case, the court is to apply interest analysis to determine which jurisdiction has the greatest interest in having its law applied to the dispute. *See, e.g., Padula v. Lilarn Props. Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994). In applying interest analysis, two separate inquiries are required: (1) the determination of the significant contacts and their locations; and (2) the determination of whether the relevant law is to conduct-regulating or loss-allocating. *See id.* "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Id.* (internal quotation marks omitted); *see, e.g., Babcock v. Jackson*, 191 N.E.2d 279, 285 (N.Y. 1963) (Fuld, J.).

Implied consent is sufficient to establish the applicable choice of law. *See, e.g., Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.d 33, 39 (2d Cir. 2009); *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001).

6

### B. Potentially Applicable Tort Law

#### 1. New York Negligence Standard

To make out a claim of negligence under New York law, a plaintiff must "establish (1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damage as a proximate result of that breach." *Di Benedetto v. Pan Am. World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir. 2004) (citing *Solomon ex rel. Solomon v. City of New York*, 489 N.E.2d 1294, 1294 (N.Y. 1985)). The state applies "the traditional, basic negligence standard of reasonable care under the circumstances" to common carriers, such as airlines. *Bethel v. N.Y.C. Trans. Auth.*, 703 N.E.2d 1214, 1215 (N.Y. 1998); *see also Plagianos v. Am. Airlines, Inc.*, 912 F.2d 57, 58 (2d Cir. 1990) (per curiam) (applying New York law).

#### 2. Virginia Negligence Standard

Under Virginia law, to make out a claim of negligence, a plaintiff must demonstrate (1) a legal duty on the part of the defendant; (2) breach of that duty; and (3) a showing that defendant's breach was the proximate cause of damage to the plaintiff. *See, e.g., Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006). It is "well-settled" as a matter of Virginia law "that a common carrier must exercise the highest degree of practical care for the safety of its passengers." *Jones v. Wash. Metro. Area Trans. Auth.*, 378 F. Supp. 2d 718, 722 (E.D. Va. 2005) (applying Virginia law) (internal quotation marks omitted). "This heightened standard of care . . . imposes liability on carriers for passenger injuries resulting from even the slightest negligence." *Id.* (internal quotation marks omitted).

### C. Virginia Law Applies

7

To the extent that the relevant law of New York and Virginia diverge, Virginia law applies in this case. That is where the accident occurred. New York's primary interest was exhausted when plaintiff boarded the plane successfully in that state.

The parties agree that Virginia law applies if plaintiff's claim is not preempted. *See* Memorandum of Law in Support of Comair, Inc.'s Motion for Summary Judgment ("Def. Mem.") 24; Plaintiff's Memorandum of Law in Opposition to Comair, Inc.'s Motion for Summary Judgment ("Pl. Mem.") 17.

## V.   Preemption Doctrine

### A. General Principles

"The preemption doctrine is rooted in the Supremacy Clause of the Constitution." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005). That clause provides, in relevant part, that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI., cl. 2. The "Clause invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824)).

The "purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks omitted); *see, e.g.,* *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). "Congress' intent may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Cipollone*, 505 U.S. at 516 (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)). "[I]ntent . . . primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding

8

it." *Lohr*, 518 U.S. at 486 (internal quotation marks omitted).  "Also relevant, however, is the structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* at 486 (internal quotation marks and citation omitted).

The Supreme Court has "long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Id.* at 485.  Thus, in "all pre-emption cases, and particularly in those in which Congress has legislated in a field which the states have traditionally occupied, [courts] start with the assumption that the historic police powers of the States [a]re not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (internal quotation marks, citation, and ellipses omitted).  This presumption against preemption "does not rely on the absence of federal regulation"; instead, it "accounts for the historic presence of state law." *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009).

Because of "the historic primacy of state regulation of matters of health and safety," *Lohr*, 518 U.S. at 485, courts are to assume "that state and local regulation related to matters of health and safety can normally co-exist with federal regulations." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 718 (1985).

"A federal agency may preempt state regulation and hence render unenforceable state or local laws that are otherwise not inconsistent with federal law provided the agency is acting within the scope of its congressionally delegated authority." *City of New York v. Permanent Mission of India to the United Nations*, 618 F.3d 172, 187 (2d Cir. 2010) (internal quotation marks omitted).  "Federal regulations have no less preemptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

"Preemption can generally occur in three ways: where Congress has expressly preempted state law, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or where federal law conflicts with state law." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005). These categories are not "rigidly distinct"; "field preemption may be understood as a species of conflict pre-emption: A state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 n.5 (1990).

### B. Express Preemption

"Express preemption arises when a federal statute expressly directs that state law be ousted." *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 101 (2d Cir. 2009). "When a federal law contains an express preemption clause, [the court must] 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Chamber of Commerce of the U.S. v. Whiting*, 131 S. Ct. 1968, 1977 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

### C. Implied Preemption

"Even where a federal law contains an express preemption clause, the court may still be required to consider implied preemption as it considers 'the question of the substance and scope of Congress' displacement of state law.'" *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008)). If "explicit pre-emption language does not appear" in a federal statute, "or [the language] does not directly answer the question," a court "must consider whether the federal statute's structure and

purpose, or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996).

State law is impliedly preempted by federal law if (1) "Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law," or (2) "federal law conflicts with state law." *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008). The former variant is known as "field preemption"; the latter, "conflict preemption." *See, e.g., Town of Clarkstown*, 612 F.3d at 104.

### 1. Field Preemption

"When Congress intends federal law to occupy the field, state law in that area is preempted." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (internal quotation marks omitted). Field preemption is to be "implied when the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where the object sought to be obtained by federal law and the character of obligations imposed by it reveal the same purpose," *Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218, 221-22 (2d Cir. 2008) (per curiam) (internal quotation marks and ellipses omitted); "state law is preempted when the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Freeman v. Burlington Broads., Inc.*, 204 F.3d 311, 320 (2d Cir. 2000) (internal quotation marks and bracketing omitted).

In determining whether a federal statute or regulation has field-preemptive effect, "the inquiry is twofold": a court must (1) determine not only that Congress possessed the requisite "intent to preempt," as well as (2) "the scope of that preemption." *Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 211 (2d Cir. 2011).

11

## 2. Conflict Preemption

Conflict preemption "occurs when compliance with both state and federal law is impossible, or when the state law stands as an objective to the accomplishment and execution of the full purposes and objective of Congress." *SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 188 (2d Cir. 2007) (internal quotation marks omitted). "State law is in 'irreconcilable conflict' with federal law, and hence [is] preempted by federal law, when compliance with the state statute would frustrate the purposes of the federal scheme." *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008) (quoting *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982)).

"[P]reemption [will be found] where it is impossible for a private party to comply with both state and federal law, and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (internal quotation marks, citation, and other punctuation omitted).

## VI.  Relevant Federal Law

### A. The Federal Aviation Act

The FAA, 49 U.S.C. §§ 40101 *et seq.*, "was enacted to create a 'uniform and exclusive system of federal regulation' in the field of air safety." *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224 (2d Cir. 2008) (per curiam) (quoting *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 639 (1973)). Shortly after it became law in 1958, the United States Court of Appeals for the Second Circuit "noted that the FAA 'was passed by Congress for the

12

purpose of centralizing in a single authority—indeed, in one administrator—the power to frame rules for the safe and efficient use of the nation's airspace.'" *Id.* (quoting *Air Line Pilots Ass'n, Int'l v. Quesada*, 276 F.2d 892, 894 (2d Cir. 1960)). "Congress and the Federal Aviation Administration have used this authority to enact rules addressing virtually all areas of air safety." *Id.* The Court of Appeals for the Second Circuit recently joined a number other circuits in concluding that, by enacting the FAA, "Congress intended to occupy the field of air safety." *Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 211 (2d Cir. 2011).

The Court of Appeals for the Second Circuit has "acknowledged that the FAA does not preempt all state law tort actions," *id.* (citing *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 635 F.2d 67, 75 (2d Cir. 1980)); the statute's savings clause "specifically preserves these actions." *Id.*; *see* 49 U.S.C. § 40120(c) ("A remedy under this part is in addition to any other remedies provided by law."); *Martin ex rel. Heckman v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 809 (9th Cir. 2009) (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 234 & n.9 (1995), and noting that *Wolens* suggests that "the airline regulatory statutes leave room for personal injury claims" (internal quotation marks omitted)).

*Air Transport Association* declined to "address the scope of any FAA preemption." *Air Transport Ass'n*, 520 F.3d at 224. And *Goodspeed* concluded only that Connecticut statutes and municipal regulations requiring a local airport to obtain a permit before removing trees on protected land were not field-preempted by the FAA, because those generally-applicable laws did not come within the scope of the preempted field—aviation safety—"in either their purpose or in their effect." *Goodspeed*, 634 F.3d at 211; *see id.* at 208-12.

Confronting a claim brought as a result of injuries suffered from the use of airstairs, the

United States Court of Appeals for the Ninth Circuit concluded that the FAA does not impliedly

field-preempt such state common-law-based claims, stating that

> *Airstairs are not pervasively regulated*; the only regulation on airstairs is
> that they can't be designed in a way that might block the emergency
> exists. 14 C.F.R. § 25.810.  The regulations have nothing to say about
> handrails, or even stairs at all, except in emergency landings.  No federal
> regulation prohibits airstairs that are prone to ice over, or that tend to
> collapse under passengers' weights.  The regulations say nothing about
> maintaining the stairs free of slippery substances, or fixing loose steps
> before passengers catch their heels and trip.  It's hard to imagine that any
> and all state tort claims involving airplane stairs are preempted by federal
> law.  *Because the agency has not comprehensively regulated airstairs, the
> FAA has not preempted state law claims that the stairs are defective.*

*Martin*, 555 F.3d at 812 (emphasis added).

### B.  The Airline Deregulation Act

#### 1.  General Principles

The ADA was enacted in 1978, reflecting Congress' determination that "maximum

reliance on competitive market forces would best further efficiency, innovation, and low prices

as well as variety and quality of air transportation services."  *Morales v. Trans World Airlines,

Inc.*, 504 U.S. 374, 378 (1992) (internal quotation marks and punctuation omitted).  "To ensure

that the States would not undo federal deregulation with regulation of their own, the ADA

included a pre-emption provision."  *Id.*  That provision covers state law affecting prices, routes,

and services:

> a State, political subdivision of a State, or political authority of at least 2
> States may not enact or enforce a law, regulation, or other provision
> having the force or effect of law *related to a price, route, or service* of an
> air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b) (emphasis added).  The term "State" is defined to include the District of

Columbia and territories or possessions of the United States.  *See id.* § 41713(a).

14

## 2. Relevant Statutory Terms: "Related To" and "Service"

Skeptically, the Court of Appeals for the Second Circuit has remarked that the ADA's preemption clause provides courts with an "'illusory test'" that requires case-by-case analysis to determine whether a given state-law cause of action is preempted. *Abdu-Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 85-86 (2d Cir. 1997) (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring)).

*Morales* provides important guidance regarding the scope of the ADA's express preemption provision. The opinion discusses at some length what is required for a state enforcement action to be "related to" prices, routes, or services. *See Morales*, 504 U.S. at 383-84. The Court explained that Congress' use of the statutory term "related to" serves to broadly preempt "[s]tate enforcement actions having *a connection with or reference to* airline rates, routes, or services." *Id.* at 384 (emphases added, internal quotation marks omitted). But the *Morales* Court was explicit about the limited reach of its conclusion, suggesting that the ADA's preemption provision does not bar state enforcement actions—and presumably other lawsuits—affecting airline rates, routes, and services in a "tenuous, remote, or peripheral" manner. *Id.* at 390 (internal quotation marks omitted). And, the Court noted, state laws of general applicability, as applied to airlines, were likely not preempted. *See id.*

The Court of Appeals for the Second Circuit has recently somewhat clarified the meaning of the word "service" as used in the ADA. In *Air Transport Association*, it noted that it had "not yet defined 'service' as it is used in the ADA," but had "little difficulty concluding that [a New York statute that] requir[ed] airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays relate[d] to the service of an air carrier." *Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 222 (2d Cir. 2008) (per curiam).

15

In construing the ADA's preemption provision, the Court of Appeals for the Second Circuit relied upon *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008).  *See Air Transport Ass'n*, 520 F.3d at 222-24.  In *Rowe*, the Supreme Court addressed the effect of the preemption provision contained in the Federal Aviation Administration Authorization Act of 1994 (the "Authorization Act") on two provisions of a Maine tobacco law that regulated "the delivery of tobacco to costumers within the State." *Rowe*, 552 U.S. at 367.  The *Rowe* Court, interpreting the Authorization Act's substantially identical preemption provision, *see* 49 U.S.C. § 14501(c)(1), began by reiterating its conclusions from *Morales*, a decision interpreting the ADA's preemption clause:

> In *Morales*, the Court determined: (1) that state enforcement actions having a connection with, or reference to carrier rates, routes, or services are preempted; (2) that such preemption may occur even if a state law's effect on rates, routes, or services is only indirect; (3) that, in respect to pre-emption, it makes no difference whether a state law is consistent or inconsistent with federal regulation; and (4) that pre-emption occurs at least where state laws have a significant impact related to Congress' deregulatory and pre-emption related objectives.

*Rowe*, 552 U.S. at 370-71 (internal quotation marks, punctuation, citation, and emphases omitted).

Additionally, *Rowe* noted that "*Morales* said that federal law might not pre-empt state laws that affect [airline] fares in only a *tenuous, remote, or peripheral manner*, such as state laws forbidding gambling," *Id.* at 371 (internal quotation marks and ellipses omitted, emphasis added).  But *Morales* "did not say where, or how, it would be appropriate to draw the line, for the state law before it did not present a borderline question." *Id.* (internal quotation marks omitted).  The Court concluded that Maine's tobacco laws were preempted because (1) the statutes had direct connections with motor carrier services; (2) they had a significant and adverse impact on the Authorization Act's ability to achieve its preemption-related objectives; and (3)

the Court disagreed with Maine's argument that the Authorization Act contained an implied exception to preemption for state laws dealing with public health issues. *See id.* at 371-77.

In *Air Transport Association*, the Court of Appeals for the Second Circuit noted that "[a] majority of the circuits [that] have construed 'service' [in the ADA] have held that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, baggage handling, and food and drink— matters incidental to and distinct from the actual transportation of passengers." *Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (per curiam) (collecting cases). It agreed with those circuits, explicitly disavowing the approach taken by the United States Courts of Appeals for the Third and Ninth Circuits; those courts have narrowly construed the term "service" in 49 U.S.C. § 41713(b). *See id.* at 223. And it noted that the challenged New York law was "indistinguishable" from the Maine statute at issue in *Rowe*; the New York law "substitute[d] New York's commands for competitive market forces, requiring airlines to provide the services that New York specifies during lengthy ground delays and threatening the same patchwork of state service-determining laws, rules, and regulations that concerned the Court in *Rowe*." *Id.* at 223-24. The court held "that requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays does relate to the service of an air carrier and therefore falls within the express terms of the ADA's preemption provision." As a result, it concluded, New York's passenger benefits statute was preempted. *See id.* Ultimately, however, *Air Transport Association* is not particularly useful in determining the meaning of "service"; it concluded only that, whatever the meaning of the term, New York's law "requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays relate[d] to the service of an air carrier." *Id.* at 222.

17

*Goodspeed* is similarly of little help with regard to this question; there, the Court of Appeals for the Second Circuit discussed the ADA's preemptive effect only briefly, and concluded that the ADA did not preempt the challenged statutes and regulations because their "impact on air carriers, if any, is remote." *Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 212 (2d Cir. 2011).

While the Court of Appeals for the Second Circuit has provided limited guidance regarding the meaning of the term "service," district courts in this circuit have tried their hand at crafting a test to determine whether a state-law claim relates to a "service" and is thereby preempted by the ADA. "Where a state law claim is said to relate to an airline service, courts in this and other circuits apply a tripartite test for preemption." *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 315 (E.D.N.Y. 2005) (citing *Rombom v. United Air Lines, Inc.*, 867 F. Supp. 214 (S.D.N.Y. 1994)); *see also Donkor v. British Airways, Corp.*, 62 F. Supp. 2d 963, 972 n.5 (E.D.N.Y. 1999) (collecting cases in which *Rombom*'s three-part test has been cited). In applying this three-part test, a court first "must determine whether the activity at issue in the claim is an airline service." *Jetblue*, 379 F. Supp. 2d at 315 (internal quotation marks omitted). "Second, if the activity implicates a service, the court must then determine whether the claim affects the airline service directly or tenuously, remotely, or peripherally. If the effect is only incidental, the state law claim is not preempted." *Id.* at 315-16 (internal quotation marks, citation, and bracketing omitted). Third, if "the activity in question directly implicates a service," the court must determine "whether the underlying tortuous conduct was reasonably necessary to the provision of the service." *Id.* at 316 (internal quotation marks omitted). "If the challenged conduct did not occur during the course of the service in question or did not further the provision of the service in a reasonable manner, then there is no express preemption and the

18

state court action should continue." *Id.* The court has been unable to find a case in this circuit that deals directly with the airstairs problem.

The FAA's savings clause, discussed in Part VI.A of this memorandum, *supra*, applies as a limit on the ADA's express preemption clause. *See* 49 U.S.C. § 40120(c).

### C. Implementing Regulations

The Administrator of the Federal Aviation Administration is required by statute to prescribe "minimum standards required in the interest of safety . . . for the design, material, construction, quality of work, and performance of aircraft." 49 U.S.C. § 44701(a)(1), as well as "regulations and minimum standards for other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security." *Id.* § 44701(a)(5). The regulations promulgated by the Federal Aviation Administration governing the design of commercial aircraft are voluminous. *See generally* 14 C.F.R. pt. 25. "Congress and the Federal Aviation Administration have used [their] authority to enact rules addressing virtually all areas of air safety. These regulations range from a general standard of care for operating requirements, to the details of the contents of mandatory onboard first-aid kits, to the maximum concentration of carbon monoxide permitted in suitably vented compartments." *Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224-25 (2d Cir. 2008) (per curiam) (internal quotation marks and citation omitted). The Federal Aviation Administration's "power extends to grounded planes and airport runways." *Id.* at 225.

The Federal Aviation Administration has set forth limited regulations governing the design of integral airstairs. *See* 14 C.F.R. § 25.810(e). "If an integral stair is installed in a passenger entry door that is qualified as a passenger emergency exit, the stair must be designed so that . . . the effectiveness of passenger emergency egress will not be impaired." *Id.* And

another Federal Aviation Administration regulation—potentially but not clearly applicable here—requires that airline emergency exits "be of such length after full deployment that the lower end is self-supporting on the ground." *Id.* § 25.810(a)(1)(iii).

No regulations, however, appear to explicitly regulate airlines' use of airstairs—as opposed to their design—and the regulations are not explicitly preemptive of state-law claims.

## VII.   Plaintiff's State-Law Negligence Claims Are Not Preempted by Federal Law

### A.   The Federal Aviation Act

Defendant contends principally that the FAA preempts the entire field of aviation safety—a field that defendant appears to assume includes plaintiff's negligence claim of failure to provide a safe means of egress and to assist her properly in deplaning—by way of implied field preemption. As a result, Comair asserts, the FAA and the Federal Aviation Administration's implementing regulations are not subject to supplementation by state law. *See* Def. Mem. 11. The Court of Appeals for the Second Circuit, defendant argues, has strongly implied that it would hold "that Congress intended to occupy the entire field of air safety." *Id.* at 12. Because "standards in the design or manufacture of airplanes are established through extensive federal regulation," Comair contends, "supplementation or modification" of those standards "by state law or state law standards of care is anathema." *Id.* The rest of the relevant portion of defendant's memorandum of law describes at some length the extensive regulations, set forth by the Federal Aviation Administration, that govern the design and manufacture of aircraft like the one in which plaintiff was a passenger. *See id.* at 13-22.

Plaintiff's contention, essentially, is that defendant failed to take due care in helping her to disembark from the aircraft, and that her Virginia cause of action is not preempted by federal law. *See* Pl. Mem. 18. She responds to defendant's memorandum by describing the case at a

different level of generality. According to Spinrad, "[a]irstairs are not pervasively regulated by the Federal Aviation Administration. Since the agency has not comprehensively regulated airstairs, the Federal Aviation Act does not preempt state law tort claims that the airstairs, as provided, were not safe for use by the general public for routine disembarkation." Pl. Mem. 9. "In areas without pervasive regulations or other grounds for preemption," she asserts, "the state standard of care remains applicable." *Id.* at 11. She largely disagrees with defendant regarding the pervasiveness of the Federal Aviation Administration's regulatory scheme, and asserts that the "certification process does not constitute a pervasive regulatory scheme evidencing an intent by Congress to preempt the field of aviation safety." *Id.* Her contention is that that "[t]here are no mandated federal certification standards for the airstairs" controlling the design of airstairs relevant to the instant case. *Id.* at 12. Nothing in the regulations, plaintiff asserts, requires airstairs or the handrails thereon to be designed in a particular fashion. *See id.* In short, plaintiff contends, while federal law may govern exclusively in the context of in-flight safety, the supervision of the disembarkation process by flight crews is a matter unregulated—and therefore not preempted—by the Federal Aviation Act. *See id.* at 14-16.

Implied field preemption does not bar plaintiff's Virginia-law claim of negligence insofar as it is based on either Comair's failure to use alternative means of disembarkation or its failure to assist plaintiff in exiting the aircraft. "The FAA was enacted to create a uniform and exclusive system of federal regulation in the field of *air safety*." *Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224 (2d Cir. 2008) (per curiam) (emphasis added, internal quotation marks omitted); *see also Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 211 (2d Cir. 2011). But this is not a case that falls within

the field of air safety. It concerns a defendant's conduct aboard a non-airborne plane, and plaintiff's claim does not depend on a theory of defective design.

The claim is not field-preempted by the FAA. The relevant statutory and regulatory framework concerns principally the airworthiness of transport planes and the in-flight conduct of airplane crew and passengers. *See generally Elassaad v. Independence Air, Inc.*, 613 F.3d 119, 124-31 (3d Cir. 2010). A review of the legislative history is not illuminating. The Senate committee report merely states that the 1958 statute contained an "appropriate" savings clause. *See* S. Rep. No. 85-1811, at 4 (1958). And the House committee report states similarly that the statute "contains 'saving provisions' of the usual type." H. Rep. No. 85-2360, at 20 (1958). Thus, accepting the Supreme Court's instruction that federal courts are to presume that "Congress does not cavalierly pre-empt state-law causes of action," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996), as well as the absence of any indication within the text or the framework of the statute that Congress meant to preclude plaintiffs like Ms. Spinrad from bringing state-law claims essentially unrelated to in-flight aircraft operations or aircraft design, this particular plaintiff's claim of negligence is not impliedly preempted. *Cf. Abdu-Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 86 (2d Cir. 1997) (noting that Congress' preemptive intent should not be "broadly interpreted without clear justification").

The statute's savings clause provides important support for the conclusion of non-premption. *See* 49 U.S.C. § 40120(c); *see also Air Transport Ass'n v. Cuomo*, 520 F.3d 218, 225 (2d Cir. 2008) (per curiam) (noting that "the FAA does not preempt all state law tort actions."). Congress apparently intended to preserve some state law causes of action against airlines by consumers. It is difficult to imagine state-law causes of action by aircraft passengers that would not be preempted if defendant's theory were to carry the day, since plaintiff's theory is

22

essentially unrelated to the design or operation of the aircraft, and is premised on allegedly negligent conduct that occurred after the plane had landed, not while it was in flight. Since it is a commonly accepted rule of construction that a court must "give effect, if possible, to every clause and word of a statute," *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (internal quotation marks omitted), this court will not adopt a construction of the statute that would render the FAA's savings clause superfluous. *Cf. Duncan v. Walker*, 533 U.S. 167, 174 (2001).

The additional points raised by Comair do not compel a different conclusion. Comair is undoubtedly correct that plaintiff's action would be preempted if it were premised solely the theory that the airstairs were defectively designed for use as an emergency exit. Assuming that the airstairs qualify as an emergency exit within the meaning of 14 C.F.R. § 25.810(a)(1)(iii), they satisfy that regulation's requirement that they "be of such length after full deployment that the lower end is self-supporting on the ground." *See* November 22, 2011 Hearing Transcript. And the Federal Aviation Administration has certified that the airplane is airworthy. *See* Standard Airworthiness Certificate (Def. Ex. L). But these facts only serve to make it clear that any claim based on *defective design* is preempted; for the reasons stated above, Spinrad's contentions that defendant should have used alternative means of disembarkation and that Comair should have had an employee at the bottom of the airstairs to assist passengers in exiting the plane are not. Comair's arguments regarding the airworthiness of the plane are relevant to the FAA's preemptive effect on state-law claims based on a defective design theory; they are beside the point here.

In sum, although it is clear that "Congress intended to occupy the field of air safety," *Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 211 (2d Cir. 2011), in essence, this is not an "air safety" case. It arises out of conduct

23

occurring while the relevant aircraft was not airborne, and the complaint essentially concerns defendant's conduct during that time—the lack of personnel at the bottom of the stairs and the means used to help passengers exit—as opposed to the design of the plane. The FAA does not preempt plaintiff's state-law negligence claim.

### B. The Airline Deregulation Act

Neither Spinrad nor Comair discuss in their memoranda of law the ADA's express preemption clause. The ADA's preemption provision is arguably relevant to the disposition of this case. *But see Martin ex rel. Heckman v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 808 (9th Cir. 2009) (concluding that the ADA's preemption clause did not apply in similar circumstances).

The ADA does not expressly preempt plaintiff's claim. As noted above in Part VI.B.1, *supra*, the ADA provides in relevant part that a "State . . . may not enact or enforce a law, regulation, or other provision having the force or effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b).

As an initial matter, it is unclear from the face of the statute whether the express preemption clause even applies in this case. Chief Judge Kozinski of the United States Court of Appeals for the Ninth Circuit appears to have concluded in a similar case that it is irrelevant. *See Martin*, 555 F.3d at 808. This may have been because is not obvious that a state common-law cause of action is a "law" or "other provision" within the meaning of the statute; certainly, one does not normally speak of state common law as having been "enact[ed]" by the courts or legislature of a state. *See, e.g.*, Black's Law Dictionary 546 (7th ed. 1999) (defining "enact," a verb, as "1. To make into law by authoritative act; to pass <the statute was enacted shortly before the announced deadline>. 2. (Of a statute) to provide"); *cf.* Julius Goebel Jr., Cases and

24

Materials on the Development of Legal Institutions 298-300 (1946) (noting that the Ordinances

of the Virginia Convention of May 1776 and Article 35 of the New York Constitution of 1777

continued pre-Founding practices and effected "a most complete absorption" of the common law

of England). It is similarly unclear from the statute whether an action by a private plaintiff

seeking to recover monetary damages pursuant to a state common-law rule can fairly be said to

be "State . . . enforce[ment] of a law"; that provision seems to instead proscribe actions taken by

a State on its own behalf to enforce, for example, state consumer protection laws. Indeed, such

laws were the subject of *Morales. See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378-

80 (1992).

The statute's legislative history suggest that removing the barriers to competition created

by state statutory and regulatory law of this type was Congress' principal object in drafting the

ADA's preemption clause; Congress does not appear to have considered the effect of state

common-law tort claims. *See* S. Rep. No. 95-165, at 197-98 (1978); H. Rep. No. 95-1211, at 15-

16 (1978) (noting, *inter alia*, that "when a carrier operates under authority granted pursuant to . .

. the Federal Aviation Act, *no State may regulate* the carrier's routes, rates, or services."

(emphasis added)). Unfortunately, the statute's definitional section does not define any of the

above-quoted terms. *See* 49 U.S.C. § 40102.

Even assuming that the ADA's preemption clause is applicable, it does not bar plaintiff

from bringing her action. Plaintiff's claim, if it can legitimately be predicted to affect Comair's

prices, routes, or services at all, only will do so, if at all, in a "tenuous, remote, or peripheral"

way. *See Morales*, 504 U.S. at 390 (internal quotation marks omitted). Plaintiff's claim will

presumably have a minimal impact, if any, on defendant's prices; defendant likely already

carries liability insurance, as it is required to by statute, *see* 49 U.S.C. § 41112(a), and with the

25

exercise of minimal care, defendant can ensure that claims such as plaintiff's arise rarely, if ever. It is already defendant's general practice to have its employees assist passengers when they disembark by way of airstairs, *see* Arbogast Dep. 45; similarly, it is already defendant's practice to use jetways to help passengers exit its planes. *See* Dep. of Davor Ilic 11, 19. While it appears that all jetways were then in use at the airport, there is no indication that one could not have been made available or that safer portable steps could not have been used.

It is similarly implausible that the relatively minimal economic impact of plaintiff's claim will have an impact on defendant's routes. Finally, even assuming that the disembarkation of passengers constitutes a "service" within the meaning of the statute, plaintiff's claim will likely have a similarly minimal impact, if any, on defendant's services. As noted above, defendant already has general practices of assisting passengers disembark when airstairs are used and of using jetways; defendant can easily prevent claims like this one simply by following its normal practices.

It is noteworthy that plaintiff's claim is brought pursuant to a state common law of general applicability. *Morales* suggests that courts should be cautious in concluding that actions brought pursuant to laws of general applicability are preempted by the ADA. *See Morales*, 504 U.S. at 390. Given the minimal impact of plaintiff's action on defendant's prices, routes, and services—even assuming that plaintiff's action is covered by the ADA's preemption clause—it would be inappropriate for the court to so conclude.

Because of the *de minimis* effect plaintiff's claim is likely to have on defendant's rates, routes, or services, the court need not engage in the three-part analysis adopted by other district courts within this Circuit. *See* Part VI.B.2, *supra*.

26

For the reasons set forth above, the ADA's express preemption clause does not bar plaintiff's claim.

## VIII. Comair is Not Entitled to Summary Judgment on Plaintiff's Negligence Claim

Defendant argues finally that it is entitled to summary judgment on plaintiff's negligence claim as a matter of Virginia law. *See* Def. Mem. 25-26. "Summary judgment is particularly inappropriate in negligence actions." *Cook v. Baker Equip. Eng'g Co., Inc.*, 582 F.2d 862, 865 (4th Cir. 1978) (citing *Pierce v. Ford Motor Co.*, 190 F.2d 910 (4th Cir. 1951) (applying Virginia law)). Here, there is at the very least an open question of fact regarding the cause of plaintiff's fall. Accordingly, defendant's motion for summary judgment on this ground is denied.

## IX. Conclusion

Defendant's motion for summary judgment is denied.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   November 23, 2011
        Brooklyn, New York